## GEORGE W. PARMENTER v. CHESTER KINGSLEY.[*]

### Compromise.   Consideration.

.P. and K. dissolved partnership, K. taking the partnership property and giving P. a
note for $938, and agreeing to pay all partnership liabilities. K. subsequently failed,
without having paid partnership debts to the amount of $1500, and informed P. that
·he could not pay them, and that P. must pay them. Finally, upon K.'s proposal, P.
agreed to pay K. $700, upon being indemnified by certain persons named, against all
said partnership debts, which indemnity was given, whereupon P. surrendered said note,
, and K. paid P. the balance, after deducting $700, and P. discharged the mortgage given
to secure the same.  Held, that the indemnity was a sufficient consideration for the com-
promise, and that P. was not entitled to recover said $700 on said note, the transaction
:being free from fraud, on the part of K.

ASSUMPSIT, in special and general counts.   The case was re-
.fered to referees, who reported as follows : ·

'*·This case was tried at January term, 1868.

" The plaintiff and defendant, about the first day of March, 1855, entered into a contract of copartnership to carry on a business of manufacturing cloth and woolen goods, at Salisbury, Vt., where the defendant resided, and had hired a factory and machinery. The plaintiff resided at Brandon. This contract was verbal, and the particular terms thereof did not appear, further than it was stipulated and agreed by the parties that no' debts should be made against the company without the consent of both parties. Under this contract, they, as partners, commenced and carried on said business, at said factory, until the 10th day of October, 1855, when, by mutual consent, the copartnership was dissolved.

" During the continuance of this partnership, the plaintiff had, from time to time, put money into the business, while the defendant had, principally, the management of the business at the factory ; and in the course of the business, partnership debts had been contracted by the defendant, without the consent of the plaintiff, but to what amount, the partners did not then definitely ascertain, nor did it appear to the referees ; but at the time of the dissolution the defendant knew, or had the means of knowing, the amount of the partnership debts, as all had been contracted either by him, or with his knowledge and consent.

" At the time of the dissolution, the plaintiff and defendant settled, and agreed and adjusted between themselves all of said partnership business ; the plaintiff conveying and releasing to the defendant all his title and interest in the goods, stock, material, property, and business of the partnership ; and the defendant, on his part, agreeing to pay the plaintiff the sum of nine hundred and thirty-eight dollars, for which he then executed and delivered to the plaintiff his promissory note, dated the 10th of October, 1855, payable to the plaintiff, or bearer, on demand, and at the same time executed a mortgage, amply securing said note ; and the defendant also made an agreement with the plaintiff that he would pay and satisfy all company liabilities of every name and nature, which agreement was in writing, in the words and figures following :

" ' Know all men by these presents, that the late firm of Kingsley & Parmenter is hereby dissolved by mutual consent and agreement. All company liabilities of every name or nature, are to be paid and satisfied by the said Kingsley. Brandon, October 10, 1855. It is further agreed that said Parmenter has no claim upon said Kingsley for past services.

(Signed,)          CHESTER KINGSLEY, <br> G. W. PARMENTER.'

" At the time of this dissolution, no inventory of stock, goods, or other company property, was taken by the partners, but it appeared before the referees that at that time there was cloth manufactured and in process of manufacture and stock on hand, sufficient to make, in all, some ten or twelve thousand yards, valued at from fifty to sixty cents a yard, and there was no evidence that at this time the company assets and property were insufficient to pay and discharge the debts and liabilities of the company, or that there was any thing in the condition of the business that made the settlement and adjustment which the partners then made, in any respect inequitable, unequal, or to the advantage of one over the other.

" On the termination of the partnership, the defendant continued the business in his own name and on his own account, until the 10th day of March, 1856.

" At this time, the copartnership debts not having been paid, the defendant, being individually indebted to quite a large amount, found that, on account of debts and liabilities against him, his failure was inevitable, and a further continuance of the business impossible ; and he, therefore, took measures to bring on the event, which could not be much longer delayed, and, accordingly, on Saturday, the 8th of March, 1856, the defendant went to Rutland and took legal advice, and either by confession of judgment, or by writs of attachment (or in some mode not clearly made to appear to the referees), caused process to be issued against himself, in favor of Wesley Morrill, Hiram Blackmer, and Dennison Blackmer, who were his brothers-in-law.

"As early as possible on Monday morning, the 10th day of March, 1856, the entire property of the defendant was taken from his possession——the largest portion of it by an officer, by virtue of the process which had been issued in favor of the said Morrill and Blackmers. The property which was thus taken by the officer, consisting mostly of the cloth manufactured and in process of manufacture, was, afterwards, on the 26th day of March, 1856, sold on executions at auction, and purchased by said Morrill and Blackmers for $1,771.50.

" At the time of the attachments, or on the Sunday and Sunday night previous, some machinery and other cloth were, by the defendant, put into the possession of Morrill & Blackmer and Dennison Blackmer, and such measures were taken by them, and in a secret manner, as effectually to put such property out of reach of attachment by the defendant's creditors. The value of the property thus disposed of without legal process, did not appear before the referees only by general estimate, and according to that, amounted

to some ten or twelve hundred dollars. In addition and concurrently with these proceedings, the defendant made an assignment in writing to his brother Harry Kingsley, of such accounts and demands owing to the defendant, and other assets, as he then had; and from this assignment only some forty or fifty dollars were collected by the assignee.

" The defendant brought about this attachment and disposal of all his attachable property, and took pains to do so without its coming to the knowledge of the plaintiff, or other creditors of the defendant; but, although the transaction was attended with suspicious circumstances, and notwithstanding the evidence did not sufficiently show the amount and value of the property thus disposed of, nor the amount of the debts and liabilities of the defendant, which were in the end paid thereby, yet the referees find, that the avails of the property received from the sale of the property on the executions on the 26th of March, 1856, and the other property put into the hands of Morrill and Blackmer by the defendant, were ultimately applied to the payment of the debts of the firm of Parmenter & Kingsley, and the individual debts of the defendant. And the referees also find that whatever amount Morrill and Blackmer, or either of them, paid in discharge of the said company's debts, or the individual debts of the defendant, or paid for the defendant, as hereinafter stated, has been fully reimbursed to them by the defendant, either out of the property received by them as above stated, or otherwise.

" Soon after the defendant's failure, the plaintiff learned that several of the partnership debts, which the defendant was bound to pay, were still unpaid, and applied to the defendant to ascertain the amount of debts still outstanding against the firm, and requested the defendant to pay them. The defendant did not fully, or satisfactorily to the plaintiff, inform him of the amount of outstanding debts, but the plaintiff learned there were debts against the company still unpaid to the amount of about fifteen hundred dollars; and the defendant told the plaintiff that he could not pay these debts, or any part of them, and that the plaintiff must pay them himself.

" The plaintiff at different times applied to the defendant on the subject of these debts, and for the purpose of inducing him to pay them; and at some time prior to September 11th, 1856, the defendant proposed to the plaintiff, if he would pay him the sum of seven hundred dollars, to procure for the plaintiff the indemnity of Morrill & Blackmer against the partnership debts still remaining unpaid. Afterwards, the plaintiff made the agreement with the defendant that for such an indemnity, to be executed by Wes-

ley Morrill, Hiram Blackmer, and Dennison Blackmer, he would pay the defendant the sum of seven hundred dollars; and in pursuance of this agreement, the said Wesley Morrill, Hiram Blackmer, and Dennison Blackmer, executed and delivered to the plaintiff a written contract of indemnity, dated the 11th day of September, 1856. At the time of the delivery of this indemnity to the plaintiff, and at the request of the defendant, the plaintiff delivered to the said Wesley Morrill the said nine hundred and thirty-eight dollar note, which he held against the defendant, and received from him, on said note, at that time or subsequently, only the amount due on said note, after deducting the sum of seven hundred dollars, which was remitted or discounted by the plaintiff, for the benefit of the defendant, and in pursuance of the agreement to pay him that sum for the indemnity so delivered to the plaintiff; and at the same time, at the request of the defendant and Morrill and Blackmer, the plaintiff discharged on the record the mortgage which the defendant had executed to secure said note.

" Whatever partnership debts remained unpaid at this time, were subsequently paid and discharged, but in what particular manner did not further appear than is heretofore stated; and the plaintiff was released from any further liability on account thereof.

" Under the above state of facts, the plaintiff claims and seeks to recover in this suit the sum of seven hundred dollars, and the interest thereon from the 11th of September, 1856, on the ground that at that date the defendant was indebted to him in that sum, which he has never paid to the plaintiff, or been legally discharged or released from paying.

" And the referees find and report that, if the foregoing facts do not release and discharge the defendant from the payment of said sum of seven hundred dollars—being the portion of said note which was unpaid by him as aforesaid—then the referees find that the plaintiff is entitled to recover the said sum of seven hundred dollars and interest thereon from the 11th day of September, 1856, to the time of judgment in this suit.

" But if from the foregoing facts the court decide that the defendant is legally released and discharged from the payment of said sum, then the referees find that the defendant is entitled to recover his costs."

At the September term, 1867, the court, AINSWORTH, Assistant J., presiding, decided, *pro forma*, that the referees' report be accepted, and that the plaintiff recover of the defendant, upon said report, the said seven hundred dollars allowed conditionally by

said referees to the plaintiff, and interest thereon from the 11th day of September, 1856; to which decision of the court, as to said seven hundred dollars and interest, the defendant excepted.

*Edwin Edgerton* and *E. J. Phelps*, for the defendant.

*Briggs & Nicholson*, for the plaintiff.

The opinion of the court was delivered by

WILSON, J. The referees do not find, nor do the facts reported by them show, that the defendant procured the surrender of the note by fraud. It is undoubtedly true that, at the time of the dissolution of the partnership, October 10, 1855, the company assets were sufficient to pay the company liabilities. The defendant continued the business in his own name and on his own account, from the time of the dissolution of the partnership until the 10th of March, 1856, but the amount of his indebtedness at the time of his failure, does not appear. On the 10th of March, 1856, the company debts had not been paid. The defendant, at that time, was indebted to a large amount, besides the company debts; he found his failure was inevitable, and caused process to be issued against himself, in favor of Morrill and Blackmers, and his entire property was taken from his possession, the largest portion of it by the process in favor of Morrill and Blackmers, and the remainder of it by his assignment to them. The plaintiff, soon after the failure of the defendant, ascertained that several of the company debts against Parmenter & Kingsley were still unpaid, and he requested the defendant to pay them. The defendant then told the plaintiff that " he, the defendant, could not pay these debts, and that the plaintiff must pay them himself." It is claimed by the plaintiff that the defendant's statement, that he could not pay the company debts, was false; but the report of the referees furnishes no evidence of any misrepresentation by the defendant as to his ability or inability to pay those debts. He said he could not pay them, and there is no evidence in the case that he could pay them at that time. The fact that the defendant, with the aid derived from the compromise with the plaintiff, did,

at a later period, pay all his debts, does not prove that his statement to the plaintiff was false. It appears that the avails of all the defendant's property which went into the hands of Morrill and Blackmer, were ultimately applied to the payment of the debts against the firm of Parmenter & Kingsley and the individual indebtedness of the defendant. The referees do not find any intent to defraud the plaintiff, or any other person. It does not appear but that it took every dollar of the defendant's property, including the $700 realized from the indemnity of Morrill and Blackmers, to pay his debts.

2. It is insisted by the plaintiff that the giving up of the note was wholly without consideration, and that the note, to the amount of $700, with interest from the date of the surrender, still remains a subsisting obligation against the defendant. It appears that the plaintiff held a note against the defendant for $938, and the defendant's agreement to pay the company debts. The company debts, at the time the indemnity was executed, were about $1500, for the payment of which by the defendant, the plaintiff had no security except the defendant's promise to pay them. The plaintiff could not compel the defendant to procure from a third person an indemnity to the plaintiff against the payment of those debts. But it appears that the defendant proposed to the plaintiff, if he would pay the defendant $700, the defendant would procure for the plaintiff the indemnity of Morrill and the Blackmers, indemnifying the plaintiff against the partnership debts then remaining unpaid. This proposition was accepted by the plaintiff. He paid the $700, received the indemnity in pursuance of the agreement, the balance of the note of $938 was paid to the plaintiff, and he surrendered the note to be cancelled. The security or additional security furnished the plaintiff for the payment of those debts, was a sufficient consideration for the compromise. Suppose the defendant at the time of his failure had not been indebted to the plaintiff, and the only subsisting obligation between them to have been the defendant's agreement to pay the company debts, and the plaintiff had paid the defendant $700 to be indemnified against those debts, it would hardly be claimed that the plaintiff could recover back the sum paid for the

indemnity, unless it was obtained by fraud, of which there is no evidence in the case. The circumstance that the $700 was paid to the defendant by deducting that sum from the amount of his note to the plaintiff, does not vary the legal effect of the transaction; it stands precisely as if the money had been paid over to the defendant, and the plaintiff had been paid in full the note he held against the defendant.

The judgment of the county court is reversed, and judgment for the defendant to recover his costs.